**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MICHAEL VACKAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-12-3716 |
| | § | |
| SENTRY SUPPLY INC., d/b/a Superior | § | |
| Supply & Steel, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Sentry Supply, Inc., doing business as Superior Supply & Steel, obtained summary judgment dismissing the claim of its former employee, Michael Vackar, that he was fired in retaliation for refusing to commit a crime. Vackar alleged that he was fired for refusing to take customers to strip clubs and to pay prostitutes to have sex with the customers. Vackar sued in state court, alleging wrongful discharge under the doctrine established in *Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733, 735 (Tex. 1985), which prohibits an employer from firing an employee based solely on his refusal to perform an illegal act. Superior timely removed on the basis of diversity jurisdiction, answered, counterclaimed, and moved for partial summary judgment on its contentions that the undisputed evidence showed that it did not instruct Vackar to commit a crime or fire him for refusing to do so, and that it fired Vackar because he submitted four fraudulent expense reports for reimbursement. Superior also sought sanctions for Vackar's frivolous claims. (Docket Entry No. 19). This court granted Superior's motion for partial summary judgment but denied the motion for sanctions without prejudice to reassertion in connection with the counterclaims. (Docket Entry No. 28).

In September 2013, Superior moved for partial summary judgment on its counterclaims for fraud, defamation, money had and received, and business disparagement, (Docket Entry No. 32) and for sanctions, (Docket Entry No. 37). Because Vackar's counsel had withdrawn, this court allowed him an extended period to obtain replacement counsel and respond to the motions.[1]  Counsel appeared on Vackar's behalf after the court-ordered deadline but did not file any responses or seek a further extension. The extended deadline for responding to the motions expired on November 11, 2013. The case is set for docket call and final pretrial conference on January 31, 2014. Vackar has

---

[1] Superior filed its first motion for partial summary judgment on March 29, 2013. Vackar filed his response on April 19, 2013. Before Superior replied, Vackar's counsel filed a motion to withdraw on April 23, 2013. On April 26, 2013, Vackar filed a one-paragraph brief in opposition to his counsel's motion to withdraw, then, three days later, on April 29, 2013, Vackar changed his mind and stated that he had retained counsel and would be able to take the remainder of the case to trial. On May 20, 2013, the court granted the motion to withdraw. *See* Docket Entry Nos. 21, 22, 23, 25. Though Vackar represented that he had retained counsel, counsel did not file an appearance. After a status conference on August 2, 2013, the court ordered Vackar to have counsel file an appearance by September 27, 2013. (Docket Entry No. 31.) Superior filed its motion for partial summary judgment on its counterclaims on September 6, 2013. (Docket Entry No. 32.) Because Vackar's counsel had still not appeared, Superior moved to extend all deadlines to give Vackar's counsel time to appear and respond to its motion. (Docket Entry No. 33). Vackar opposed that motion for an extension of time. After the court ordered Vackar to explain his opposition (Docket Entry No. 34), Vackar not only changed his mind and consented to the extension (Docket Entry No. 35), but asked to have more time, until October 4, 2013, to find another lawyer (Docket Entry No 36). The court agreed and set a deadline for Vackar to have counsel file a notice of appearance. On September 30, 2013, Superior submitted the additional information that it had been contacted by an attorney, Bob Mabry, located in the Woodlands, Texas. Mabry told Superior that Vackar had retained him in this case. According to Superior, Mabry claimed that his "license to practice law in this District had expired" and that he "would be seeking readmission." (Docket Entry No. 38). To give Vackar and his counsel time to move to appear *pro hac vice* and to respond to the pending motions, on October 28, 2013, the court ordered Vackar to confirm that he had retained counsel and to respond to the motion for partial summary judgment no later than November 11, 2013. (Docket Entry No. 40). That deadline passed without any filing. On November 15, 2013, Vackar's attorney moved for admission *pro hac vice*. (Docket Entry No 41). The court granted that motion (Docket Entry No. 42). Vackar has still filed no response to Superior's motion for partial summary judgment or sanctions.

The motions for partial summary judgment and sanctions have been on the docket for over three months. Vackar's counsel has been able to file documents with this court for over a month. Despite that ability and Superior's prodding (Docket Entry No. 44), and the fact that the joint pretrial order and docket call are due next month, Vackar's counsel has not responded, sought any extension, nor filed an explanation of the failure to do so.

filed nothing since his new counsel sought and obtained leave to appear *pro hac vice* in this case, on November 15, 2014.  On December 17, Superior filed a "notice" of Vackar's failure to comply with the court-ordered deadlines and seeking guidance on the docket-call setting. (Docket Entry No. 44).  Vackar has not responded.

As explained in detail below, Superior's motion for partial summary judgment on the counterclaims for fraud, money had and received, defamation, and on all the elements of business disparagement except malice is granted.  Sanctions are also granted under federal and state law.  A hearing is set for **January 31, 2014**, at 12:00 p.m., in Courtroom 11-B on the issues of malice, counterclaim damages, and the sanctions amount.  This hearing will take the place of docket call.  No joint pretrial order need be filed.  But by **January 24, 2014**, Superior must file a list of exhibits and witnesses (with a description of the subject of their testimony) that it intends to present at the January 31 hearing, and provide Vackar with a set of the exhibits.

## I.    Background

The background was set out in earlier court rulings and is summarized as needed here.  Vackar worked at Superior as a sales representative from January 16 to March 23, 2012.  He did not make a sale during that period.  Superior asserted, and Vackar presented no controverting evidence, that Vackar's poor performance was a concern from the beginning.  His supervisor, Bill Kotcher, Vice-President of Superior's Fittings Division, first expressed concern over Vackar's sales ability on January 26, 2012, only ten days after Vackar began work, in an email to the recruiter who had introduced him to Vackar.  Kotcher discovered that Vackar had far fewer industry contacts than expected for someone who had been in the industry for 35 years.  Another salesperson Superior hired had 74 contacts; Vackar listed only 17 or 18.  In a February 17 email to Wayne LeBert,

Superior's executive vice-president, and Steve Mitchell, Superior's president, Kotcher described Vackar as "disappointing," stating that he "does not seem organized and quite frankly has not earned my trust."  Kotcher wrote that Vackar needed "to perform in the next 30–45 days or [the company needed] to start considering alternative action."

On March 20, Kotcher emailed Superior's recruiter after accompanying Vackar to a sales meeting.  Kotcher stated that "it was a train wreck watching [Vackar] speak with a customer."  He described Vackar as "one of the worst communicators I have ever met in my 20 years of business . . . ."  Kotcher noted that he was interviewing other candidates for Vackar's position and asked the recruiter to "start pushing hard to find a replacement."

On March 21, while on a tour of a potential customer's facilities, Kotcher met Debbie Salinas, who Vackar listed as a contact and claimed to have met with several times, including over dinner the previous week.  Vackar had submitted an expense report for the dinner meeting with Salinas and one of her coworkers, but Salinas had trouble remembering Vackar and denied that the dinner meeting had occurred.  Vackar admitted that he had not met with Salinas and had submitted a false expense report.  Kotcher discovered three additional instances in which Vackar had falsified expense reports seeking reimbursement.  The first was a report seeking reimbursement for a dinner with Mike Jones and his wife on Valentine's Day, February 14, 2012.  Vackar admitted that he did not have dinner with Jones (who was not married).  Jones confirmed that no dinner had taken place. The second was an expense report seeking reimbursement for purchasing a $100 gift card for Cory McShannon as a charitable auction donation.  Vackar admitted that he did not give a gift card to McShannon, and McShannon confirmed that he never received a gift card.  The third was a dinner

4

with Steve Tinsley and his wife on March 7, 2012.  Vackar admitted that he did not have dinner with Tinsley, which Tinsley confirmed.

On March 23, Kotcher called Vackar into his office to discuss the expense reports.  Linda Shilling, another employee, was also present.  Kotcher explained to Vackar that the individuals named on the expense reports had denied seeing him recently or having any meals with him. Kotcher offered to call the individuals listed in the expense reports and to give Vackar the chance to explain "what's really going on and be truthful."  When Vackar refused both offers, Kotcher fired him.  Superior later uncovered additional evidence that Vackar lied about his contacts and attendance at sales meetings.

After he was fired, Vackar submitted an application for unemployment benefits to the Texas Workforce Commission (TWC).  Vackar stated on the application that he was no longer employed because he "[d]id not like my work."  In Superior's response to the TWC, Kotcher listed four reasons for Vackar's termination: falsifying and misrepresenting expenses on expense reports; falsifying call and sales reports; nonperformance; and insubordination.

Several months after he was fired, Vackar filed this suit.  Vackar alleged that from the beginning of his employment at Superior, he was instructed to take clients to strip clubs and pay strippers to have sex with them.  In his summary-judgment response, Vackar did not deny that he submitted false expense reports, but asserted that Kotcher told him to "pad" the expense reports to get cash to take his customers to strip clubs and pay the dancers at the clubs to have sex with them. Vackar asserted that when he refused, Kotcher told him he would still need to pad his expense reports so that he could take Kotcher and sales staff to strip clubs for business meetings, although Vackar did not state that any meetings were held at strip clubs.  Vackar asserted that when he

threatened to report Kotcher to corporate headquarters "in early March," Kotcher sent an email to all employees about Superior's expense report and entertainment policy, including a statement that places like strip clubs should be "avoided." Vackar stated that, on March 16, 2012, he and another salesman, Larry Samek, attended a sales meeting with Kotcher, who again told Vackar to solicit strippers for customers. When Vackar refused, Kotcher "exploded angrily," told Vackar "to get [his] customers bred," and left the meeting "in a huff." One week later, the day before a corporate meeting in Louisiana, Kotcher fired Vackar for falsifying expense reports.

In addition to filing suit, Vackar's then-counsel went to the media, including prime-time television news, a radio talk show, and the internet. Through counsel, Vackar accused Superior of ordering its sales representatives to take clients to sex clubs and to provide them with sex. In its submissions, Superior describes the statements as follows:

> 1.      The Strip Club Statements: Vackar's counsel stated that Superior instructed Vackar to take customers to strip clubs and pay for the strippers to perform "sexual favors" for the customers.
> 2.      The Blackmail Statements: Superior instructed Vackar to secretly videotape the "sexual favors" with the strippers and use the videos to blackmail the customers.
> 3.      The Several Employees Statement: When asked about the evidence to prove the Strip Club Statements and Blackmail Statements, Vackar's counsel stated that at least several other employees witnessed them.
> 4.      The Termination Statements: Vackar's counsel said that Superior terminated Vackar's employment because he refused to comply with Superior's instructions to obtain sex for clients and videotape them for blackmail. The internet reports of the media statements included graphic images of sex acts. Both Vackar's accusations and the images appear when "Superior Supply & Steel" is "Googled."

In support of its summary judgment motions in this court, Superior submitted affidavits from current and former Superior employees denying Vackar's accusations and denying that they ever witnessed Kotcher instruct Vackar or anyone else to take clients to strip clubs or pay for prostitutes. Superior also submitted evidence that Vackar falsified expense reports without any instruction from

6

Kotcher.  In emails Vackar sent to Kotcher before Kotcher learned of the expense account fraud, Vackar justified the Jones dinner, the McShannon gift card, and the Salinas dinner, as legitimate expenses to further client relations.  Vackar responded to an email from Kotcher emphasizing the need to be conservative in spending company money by stating that he understood "fully" but that clients could "order a lot" when "someone else is picking up the check . . . .  They are use[d] to being wined and dined."  Superior also submitted evidence that Vackar told individuals, both inside and outside the company, that he liked working at Superior and mentioned nothing about being asked to do illegal acts.

This court granted Superior's motion for partial summary judgment on Vackar's claim that he had been wrongfully terminated because he refused to commit an illegal act.  Under Texas law, an employer can "terminate an at-will employee without fear of legal repercussions for a good reason, a bad reason, or no reason at all."  *Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496, 502 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *County of Dallas v. Wiland*, 216 S.W.3d 344, 347 (Tex. 2007)).  *Sabine Pilot* establishes a common-law exception to the employment at-will doctrine, prohibiting an employer from firing an employee solely because that employee refused to perform an illegal act.  687 S.W.2d at 735.  A claim for wrongful termination under *Sabine Pilot* requires a plaintiff to prove that: (1) he was required to commit an illegal act that carries criminal penalties; (2) he refused to engage in the illegality; (3) he was discharged; and (4) the sole reason for his discharge was his refusal to commit the unlawful act.  *White v. FCI USA, Inc.,* 319 F.3d 672, 676 (5th Cir. 2003) (citing *Sabine Pilot,* 687 S.W.2d at 735).  To prevail under the "very narrow" *Sabine Pilot* exception, the former employee must prove that "his [or her] discharge was for no reason other than his refusal to perform an illegal act."  687 S.W.2d at 735.  "An employer who

discharges an employee both for refusing to perform an illegal act *and* for a legitimate reason or reasons cannot be liable for wrongful discharge." *Tex. Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 633 (Tex. 1995).  Because the undisputed evidence, at a minimum, showed that Superior had reasons for firing Vackar that had nothing to do with his alleged refusal to perform an illegal act, this court granted partial summary judgment dismissing the *Sabine Pilot* retaliation claim.[2]

In making this ruling, the court noted that Vackar's declaration was contradicted by his own statements and conduct.  He stated in his unemployment application that he was fired because he did not like his work.  Although he asserted that he was fired when he threatened to expose Kotcher, uncontroverted evidence shows that Vackar did not reveal Kotcher's supposed scheme at times when, given his version of events, he would have been expected to do so.  Those times included when Kotcher confronted him about the false expense reports and fired him in front of another employee; during his employment, to coworkers; to the recruiter who brought him to Superior, in

---

[2] Superior submitted extensive evidence, mostly undisputed, including employee declarations, that its expense and entertainment policy prohibiting meetings at strip clubs was longstanding and that Kotcher never insisted on providing sexual entertainment for customers.  Superior also submitted competent and uncontroverted summary-judgment evidence showing that Vackar's lack of sales contributed to its decision to fire him.  *See Ball v. Duty Free Ams., Inc.*, No 4:08-cv-0232 (NFA), 2009 WL 780915, at *5 (S.D. Tex. Mar. 23, 2009) (holding that an employer's documented dissatisfaction with employee's performance was a legitimate reason for her termination); *Griffith v. Wyndam Travel, Inc.*, No. 05-97-00372-cv, 1999 WL 595818, at *4 (Tex. App.—Dallas Aug. 10, 1999, no pet.) (holding that an employee's poor performance was a legitimate reason for his termination).  In nine weeks with the company, Vackar failed to make a sale and was far from achieving his first, facts Vackar does not dispute.  Emails from Kotcher showed not only continued concern over Vackar's performance and failure to improve, but that Superior had already begun the process of replacing Vackar before it discovered the expense-report fraud.  Some of these emails were sent even before the March confrontation with Kotcher that Vackar asserted led to his firing.  Vackar did not dispute his poor sales performance or his failure to follow Kotcher's directions about communications with potential clients.  Nor did Vackar assert that he was told to falsify his progress with potential customers.  Discovering that Vackar was lying about his customer contacts and sales meetings was a legitimate reason to fire him that is independent of the falsified expense reports.  Because no reasonable factfinder could conclude from the record that Vackar's termination was based solely on his refusal to take clients to sexually oriented clubs to spend money to have dancers provide them sexual favors and because no reasonable factfinder could conclude that Vackar's admitted performance deficiencies and rule violations were not a reason for the decision to fire him, the court granted Superior's motion for partial summary judgment.

response to the recruiter's questions about whether he liked his job; or to Superior's president, when Vackar stated that he intended to reveal the demands he accused Kotcher of making. Additionally, Vackar did not explain why, if Kotcher had demanded that Vackar submit fraudulent expenses, Vackar repeatedly lied to him about the falsified expense reports or why Kotcher emphasized the need for employees to be frugal when entertaining employees. In an email to Kotcher describing his sales progress, for instance, Vackar discussed the dinner with Debbie Salinas that he claimed on the expense report and described the discussions the two supposedly had.

Superior also sought sanctions for Vackar's allegedly frivolous allegations in his pleading and other filings, and for his defamatory media and internet statements. Some of the sanctions sought were under Rule 11 of the Federal Rules of Civil Procedure, which "prohibits filings made with 'any improper purpose,' the offering of 'frivolous' arguments, and the assertion of factual allegations without 'evidentiary support' or the 'likely' prospect of such support." *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33, 39 (1st Cir. 2005) (citing FED. R. CIV. P. 11(b)(1)). The rule requires that a motion for sanctions "be made separately from any other motion" and be served on the opposing party 21 days before it is filed with the court. FED. R. CIV. P. 11(c)(2). Superior's motion was incorporated into its motion for summary judgment, and there was no indication in the motion that Superior served it on Vackar 21 days before filing. Superior's motion for sanctions under Rule 11 was denied at that time.

Superior also moved for sanctions under Rule 13 of the Texas Rules of Civil Procedure. The Fifth Circuit has held that "state sanctions rules [apply] to pleadings filed in state court before removal." *Tompkins v. Cyr* , 202 F.3d 770, 787 (5th Cir. 2000). Rule 13 applied to Vackar's petition filed in state court. Unlike Rule 11 of the Federal Rules, Rule 13 does not require the

motion to be served on the opposing party before it is filed with the court.  Because additional evidence relevant to Superior's Rule 13 motion was likely to be submitted by the parties in connection with Superior's counterclaims, Superior's motion for sanctions was denied without prejudice.

Superior has now moved for partial summary judgment on its counterclaims and moved for sanctions.  (Docket Entry Nos. 32, 37).  Superior emphasized that other than his own statement, and contrary to his claim to the media that he had witnesses to Superior's demands that he pay others to have sex with potential clients, Vackar in fact had no evidence to support any of the statements he made in his pleadings, to the media, or on the internet.  Superior submitted competent and consistent evidence from witnesses that they never said or witnessed the events or statements that Vackar alleged.  Superior submitted the declarations of each Superior employee and former employee who either worked with Vackar or held a position similar to Vackar's.  Superior also emphasized Vackar's own statements and emails during his employment, when he was fired, and when he claimed unemployment compensation, in which he hid the fraudulent expense reimbursement claims, lied about them when confronted, and made other statements inconsistent with his litigation position and his statements to the media.

Superior also submitted evidence of the harm to its reputation Vackar's statements have caused.  The internet articles include sections inviting readers to comment.  Superior submitted evidence of highly negative reader comments about Superior.  In addition, Superior submitted evidence of "a good deal of fire from Superior's customers."  (Docket Entry No. 32, p. 17).  "Ever since the publication of the Media Statements and even after the Court dismissed the *Sabine Pilot* claim, Superior's customers (and probably ex-customers now) have repeatedly pelted Superior with

10

questions about this 'sex scandal.'" (*Id*.).  Superior explained that despite the fact that the *Sabine Pilot* claim has been dismissed, the defamatory statements and their effects remain.  Superior has asked this court to grant summary judgment on its counterclaims so that Superior may attach the order to requests to internet providers to take down Vackar's statements and "stop (or at least slow) the continued degradation of Superior's reputation that Mr. Vackar has caused." (*Id*.).

## II.     The Summary Judgment Motion

### A.     The Legal Standard

A party is entitled to summary judgment if it establishes that there is no genuine dispute of material fact. FED. R. CIV. P. 56(a).   To be entitled to summary judgment on its own claim, a plaintiff (or, in this case, a counterplaintiff) must show that there are no genuine disputes of material fact and establish each element of its claim as a matter of law. The absence of a response to a summary judgment motion is not a sufficient basis to grant it, but a failure to controvert facts by competent summary judgment evidence may lead to the court accepting them as undisputed.  Rule 56(d).  If, however, the nonmovant fails to respond appropriately, or if they fail to respond at all, summary judgment is not awarded to the moving parties simply by default.  *See Ford–Evans v. Smith*, 206 F. App'x 332, 334 (5th Cir. 2006); *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 n.3 (5th Cir. 1995); *Hibernia Nat'l Bank v. Administracion Cent. Soc. Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985); *John v. Louisiana*, 757 F.2d 698, 708 (5th Cir. 1985).  Instead, summary judgment is appropriate only if the moving parties have demonstrated the absence of a genuine issue of material fact, and shown that judgment is warranted as a matter of law.  *See Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006); *Hetzel*, 50 F.3d at 362 n.3 (quoting *Hibernia Nat'l Bank,* 776 F.2d at 1279).

### B.    Superior's Fraud Counterclaim

To establish common-law fraud under Texas law, a plaintiff must establish:

> (1) that a material misrepresentation was made; (2) the representation
> was false; (3) when the representation was made, the speaker knew
> it was false or made it recklessly without any knowledge of the truth
> and as a positive assertion; (4) the speaker made the representation
> with the intent that the other party at upon it; (5) the party acted in
> reliance on the representation; and (6) the party thereby suffered
> injury.

*Turner v. Pavlicek*, H-10-749, 2011 WL 4458757, at *11 (S.D. Tex. Sept. 22, 2011) (quoting

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009)); *see also Exxon*

*Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011).

Superior pointed to competent summary-judgment evidence of Vackar's admissions that he

knowingly made false representations when he sought reimbursement for expenses for customer

meals or gifts.  Superior reimbursed Vackar based on these representations.

Although Vackar contended that he was told to take customers to strip clubs and submit

reimbursement requests for these expenses representing them as for other items, Vackar admitted

that he submitted false expense reimbursements.  No competent summary-judgment evidence

supports an inference that Vackar took clients to strip clubs or bought them sexual favors.  Vackar

intended Superior to rely on the statements in the reimbursement requests, and it did so in paying

Vackar the amounts submitted.  His representations that he had incurred expenses entertaining

clients for Superior's benefit was material to Superior's decision to pay the reimbursements

requested.  Superior reimbursed Mr. Vackar and was injured in the amount of the reimbursement.

Superior has satisfied all the elements of its fraud counterclaim.  Summary judgment on that

counterclaim is granted.

### C.      Superior's Counterclaim for Money Had and Received

Money had and received is an equitable claim to prevent unjust enrichment.  The claim is founded on one person obtaining money that in "equity and good conscience" belongs to another. *J.C. Penney Co. v. Pitts*, 139 S.W.3d 455, 462 n. 4 (Tex.App.—Corpus Christi 2004, no pet.); *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex. App.—El Paso 1997, no writ).  Vackar admitted that at least $925.24 of the $965.35 he received in reimbursement was for falsely claimed expenses.  For the reasons discussed above, Superior has shown that, as a matter of law, based on undisputed facts in the record, in equity and good conscience this is Superior's money.  Summary judgment on this counterclaim is granted.

### D.      Superior's Counterclaims for Libel and Slander

Corporations may sue to recover damages resulting from defamation.  *Neely v. Wilson*, No. 11-228, 2013 WL 3240040, at *15, – S.W.3d – (Tex. 2013) (citing *Gen. Motors Acceptance Corp. v. Howard*, 487 S.W.2d 708, 712 (Tex. 1972); *Newspapers, Inc. v. Matthews*, 399 S.W.2d 890, 893 (Tex. 1960)).  Under Texas law, "[d]efamation is a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.).  Defamation can be oral or written—that is, slander or libel.  *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex. 1995); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001.  There is no privilege arising from litigation when a party to the litigation slanders or libels someone in the media, as opposed to simply delivering pleadings to the media.  *See Hill v. Herald-Post Publ'g Co.*, 877 S.W.2d 774, 783 (Tex. App.—El Paso, 1994), *rev'd in part on other grounds*, 891 S.W.2d 638 (Tex. 1994); *Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 28 (Tex. App—Houston [1st Dist.] 2004, pet denied).

Vackar "published" the statements at issue by having his attorney appear for media interviews, intending that the oral statements would be broadcast (which they were, on television and radio) and that they would appear in written form (which they did, on the internet). The statements Vackar's counsel made were reported as "facts."  Counsel stated that Vackar "was told to take his customers to gentleman's establishments in Houston and get the ladies, dancers at the clubs, to perform sexual acts on his customers[.]" In response to a question about how Vackar could prove his accusations, counsel stated that  Vackar "certainly has at least several coworkers who overheard the directions given to him to take these customers to strip clubs."  Statements that accuse a party of having committed a crime are defamatory per se.  *See Leyendecker & Assocs. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984), *Buck v. Savage*, 323 S.W.2d 363, 369 (Tex. App.—Houston 1959, writ ref'd n.r.e.).  Counsel for Vackar accused Superior of soliciting other persons to have sex and to blackmail them.  These statements are defamatory per se.

Even with Vackar's statements, Superior has submitted uncontroverted evidence that at least some of what Vackar's counsel told the media was false.  There are no witnesses who support Vackar's version of events, although Vackar, through counsel, stated that there were "certainly" multiple witnesses to Superior's demand that sales representatives take clients to strip clubs, obtain sexual favors for the clients, and videotape them for blackmail.  All the witness affidavits and declarations are to the contrary.  During discovery, Vackar himself recanted this statement, instead conceding that he knew of only one witness, Larry Samek, who saw and heard Kotcher make any of the statements he allegedly made to Vackar.  Samek has sworn otherwise.  But Vackar's media statements went further, claiming that there were multiple witnesses to the statements.  He has acknowledged that this was untrue.

14

Vackar stated that Kotcher gave him instructions to take clients to sex clubs and blackmail them, and to falsify expense reports to cover the cost.  That is Vackar's only support for the statements.  Vackar admits that he can provide no proof other than his own self-serving statements. (Docket Entry No. 32, Ex. A, Admissions 89-91.)  Superior points to an overwhelming amount of summary-judgement evidence indicating that Vackar's statements were false.   Courts have found such scant support inadequate to preclude summary judgment dismissing a defamation claim.  *See Sanchez v. Dallas/Fort Worth Int'l. Airport Bd.*, 438 Fed. App'x 343, 346-47 (5th Cir. 2011) (unpublished, per curium) ("[A] self-serving affidavit, without more evidence, will not defeat summary judgment[.]"); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) ("Self-serving affidavits are not the type of 'significant probative evidence' required to defeat summary judgment."); *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (affirming summary judgment in favor of plaintiff because "the only evidence in support of the defendants' theory is a conclusory, self-serving statement by the defendant" and "[t]he record contains no other evidence" in support of the defendants' theory); *Traynor v. Chase Home Fin.*, LLC, No. 11-CV-800, 2013 WL 704932, *4 (N.D. Tex. February 27, 2013) (granting summary judgment in defendant's favor because "[t]he only summary judgment evidence offered by [plaintiff] related to [his] claim is [his] own summary judgment affidavit").

When a private person such as Vackar speaks about an entity like Superior, which has no public-figure status and is not a media entity, the speech is on matters of private concern, and the subject of the speech sues for defamation, that plaintiff does not have to show that the speaker acted negligently or with malice.  *Thomas-Smith v. Mackin*, 238 S.W.3d 503, 509 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see also, Hurlbut v. Gulf Atl. Life Ins.*, 749 S.W.2d 762, 766 (Tex. 1987).

"Malice," in the defamation context, means making a defamatory statement with knowledge of its falsity or in reckless disregard as to its truth. *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154 (Tex. 2004). Although Superior argues that there is ample basis to infer malice on Vackar's part, that is not necessary to grant summary judgment on the defamation claim.

"In the recovery on a claim of defamation per se, the law presumes actual damages and no independent proof of damages to reputation or of mental anguish is required." *Knox v. Taylor*, 992 S.W.2d 40, 60 (Tex. App.—Houston [14th Dist.] 1999, no pet.))*; Leyendecker*, 683 S.W.2d at 374 ("Once injury to reputation is established a person defamed may recover general damages without proof of other injury."); *Maas v. Sefcik*, 138 S.W.2d 897, 900 (Tex. App.—Austin 1940, no writ) (nominal damages available when a statement is defamatory per se).  Because at least some of the statements at issue were defamatory per se, Superior need not produce evidence of pecuniary injury in order to recover nominal damages.

Superior also seeks exemplary damages on the basis that the statements were made with malice.  *See* Tex. Civ. Prac. & Rem. Code §§ 41.001(7), 41.003(a)(2); *Bentley v. Bunton*, 94 S.W.3d 561, 604-05; *see also*, Tex. Civ. Prac & Rem. Code § 41.004(a) (nominal damages are not sufficient to sustain exemplary damages).  There is ample evidence showing that Vackar used the media to publicize the filing of his lawsuit and to increase the pressure on Superior.  The statements Vackar's counsel made to the media appeared on the internet and included false statements that many employees of Superior witnessed orders to take clients to sex clubs, obtain sexual favors for them, and videotape the clients for blackmail purposes.  This court has found that the statements were defamatory.  If they were made with malice, they were not only defamatory, but warrant

16

exemplary damages.  At the hearing the court sets for January 31, 2014, Superior is to present evidence on exemplary damages.

### D.    Superior's Business-Disparagement Counterclaim

Business disparagement in Texas has elements similar to defamation.  "The general elements of a claim for business disparagement are publication by the defendant of the disparaging words, falsity, malice, lack of privilege and special damages.  *Hurlbut v. Gulf Atlantic Life Ins Co.*, 749 S.W.2d 762, 766 (Tex. 1987).  The undisputed evidence in the record shows that Vackar published disparaging words about Superior, the statements were false, and were made without privilege. The issues of malice and entitlement to exemplary damages will be addressed in the hearing set at the end of this Memorandum and Order.  Summary judgment is granted as to the other elements of Superior's business-disparagement counterclaim.  Because "[t]here can be but one recovery for one injury, and the fact that . . . there may be more than one theory of liability[] does not modify this rule," *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006) (quotation omitted), at the January 31, 2014 hearing, Superior must present evidence demonstrating the difference between the defamation and business disparagement injuries.  *See*, *e.g.*, *Hulburt v. Gulf Atlantic Life Ins. Co.*, 749 S.W.3d 762, 766 (Tex. 1987) ("The action for defamation is to protect the personal reputation of the injured party, whereas the action for injurious falsehood or business disparagement is to protect the economic interests of the injured party against pecuniary loss.").

## III.    Superior's Motion for Sanctions

On September 6, 2013, Superior served its separate motion for sanctions under Rule 11(c)(2) of the Federal Rules of Civil Procedure.  Vackar has not withdrawn or corrected the challenged contentions.  The motion is considered under Rule 11 and, to the extent sanctions are sought for

pleadings filed in state court before removal, under Rule 13 of the Texas Rules of Civil Procedure. *Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000).

**A.      The Legal Standards**

Under Texas law, a court may impose sanctions when it finds that a pleading was groundless and was brought either in bad faith or for the purpose of harassment. TEX. R. CIV. P. 13 and 215.2(b); *see also, GTE Commc'ns v. Tanner*, 856 S.W.2d 725, 730 (Tex. 1993).  To determine if Rule 13 sanctions are proper, the court must examine the circumstances that existed at the time the pleading was filed and ignore the merits of the legal claim.  *Home Owners Funding Corp. v. Scheppler*, 815 S.W.2d 884, 887-89 (Tex. App.—Corpus Christi 1991, no writ).  A lawsuit is "groundless" when "there is no arguable basis for the cause of action."  *Attorney Gen. of Texas v. Cartwright*, 874 S.W.2d 210, 215 (Tex. App.—Houston [14th Dist.] 1994, writ denied). To determine if a pleading was groundless, the court must ask whether "party and counsel made a reasonable inquiry into the legal and factual basis of the claim at the time the suit was filed." *Lake Travis Indep. Sch. v. Lovelace*, 243 S.W.3d 244, 255 (Tex. App.—Austin 2007, no pet.).  "A party acts in bad faith when discovery puts him on notice that his understanding of the facts may be incorrect and he does not make a reasonable inquiry into the facts before filing a pleading." *Lovelace*, 243 S.W.3d at 256 (citing *Monroe v. Grider*, 884 S.W.2d 811, 819 (Tex. App.—Dallas 1994, writ denied).

Federal Rule of Civil Procedure 11 prohibits a party from filing a pleading in federal court for an improper purpose or without evidentiary support for the allegations made.  FED. R. CIV. P. 11(a)(1), 11(a)(3); *see also, Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001). An attorney must have made a reasonable inquiry into the facts and law of a case to sign papers filed

18

in court.  *Mansour*, 237 F.3d at 548.  Violations may be addressed by sanctions on either the attorney or the party.  *See* Committee Note to Rule 11; *see also Topalian v. Ehrman*, 3 F.3d 931 (5th Cir. 1993).  Courts must impose the least severe sanction on attorneys and parties who violate Rule 11.  *Id.*  "[T]he least severe sanction for a lawsuit that is wholly frivolous is the imposition of reasonable attorneys' fees and expenses."  *Id.* (*citing Granader v. McBee*, 23 F.3d 120, 124 (5th Cir. 1994)).

       **B.**     **Analysis**

Superior submits the same evidence in support of its sanctions motion that it did in support of its motion for partial summary judgment on its fraud, defamation, and business-disparagement counterclaims.  The court finds that sanctions are appropriate under both Federal Rule 11 and Texas Rule 13 for asserting a wrongful termination claim based on *Sabine Pilot* when the readily available information clearly showed that Vackar had a number of performance problems in the short time he held his job and that he could not make the necessary showing that the only reason he was fired was his refusal to engage in allegedly illegal actions.  After removal, Vackar continued to file pleadings containing statements and accusations that the evidence repeatedly failed to support and instead showed were false.  These false statements and accusations included that Vackar was instructed to take clients and Superior employees to sex clubs and to pay for them to obtain sex, and that he was fired solely because he refused to follow the instructions.  This court finds that when Vackar filed his suit, he did so in violation of Rule 13, and that when he continued to file papers accusing Superior employees of such conduct, he did so in violation of Rule 11.  Sanctions are warranted. The hearing will address the form and extent of sanctions as well.

**IV.     Conclusion and Order**

Summary judgment is granted on Superior's counterclaims for fraud, money had and received, defamation, and on all the elements of business disparagement but malice.  Sanctions are also granted under federal and state law.  A hearing is set for **January 31, 2014**, at 12:00 p.m., in Courtroom 11-B.  This hearing will take the place of docket call.  No joint pretrial order need be filed.  But by **January 24, 2014**, Superior must file a list of exhibits and witnesses (with a description of the subject of their testimony) it intends to present at the January 31 hearing, and provide Vackar with a set of the exhibits.

SIGNED on January 2, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge