IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL VACKAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-12-3716 |
| | § | |
| SENTRY SUPPLY INC., d/b/a SUPERIOR SUPPLY & STEEL | § § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This court granted the summary judgment motion filed by Sentry Supply, Inc., doing business as Superior Supply & Steel, dismissing former employee Michael Vackar's claim that he was fired in retaliation for refusing to use his client-development expense account to take customers to strip clubs and to pay prostitutes to have sex with those customers. (Docket Entry No. 28). The court also granted Superior summary judgment on its counterclaims for fraud, money had and received, defamation, and some elements of business disparagement, and granted Superior's motion for sanctions under federal and state law. (Docket Entry No. 45). On February 27, 2014, the court held a hearing on the remaining elements of the business disparagement claim and on the amounts appropriately awarded as damages for the counterclaims and sanctions. (Docket Entry No. 51). This Memorandum and Order addresses those issues.

Based on the record, including the pleadings, motions, briefs, the witness testimony, the parties' arguments, and the applicable law, the court denies Superior's claim for business disparagement, and orders Vackar to pay Superior $13,225.24 in damages and $5,000 in sanctions. The reasons are set out below.

1

**I.      Background**

The factual and procedural background was set out in detail in earlier court rulings and is only briefly summarized here. Vackar worked at Superior as a sales representative from January 16 to March 23, 2012. He made no sales during his employment. Superior asserted, and Vackar presented no controverting evidence, that Vackar's poor performance was a concern from the beginning.

In March 2012, Superior discovered that Vackar had submitted multiple requests for reimbursement of client-development expenses that he had not incurred. Vackar admitted that he had made up the dinners, had not met with the clients, and had not incurred the expenses. Bill Kotcher, the Vice President of Superior's Fittings Division, confronted Vackar about the reimbursement requests on March 23, 2012. When Vackar failed to explain the expense reports, Kotcher fired him.

Several months after he was fired, Vackar filed this suit. Vackar alleged that throughout his employment at Superior, he was instructed to take clients to strip clubs and pay strippers to have sex with them. Vackar claimed that he submitted fake reimbursement requests because Kotcher told him to "pad" the expense reports to get cash to pay for the strip club outings. Vackar asserted that he was fired for defying repeated instructions to take customers to the clubs and for threatening to report Kotcher to corporate headquarters.

In addition to filing suit, and with Vackar's knowledge and consent, his counsel gave an interview to the media. It was covered on prime-time television news, a radio talk show, and the internet. Through his lawyer, Vackar accused Superior of ordering its sales representatives to take clients to sex clubs, buy them sex, and secretly tape the sexual encounters to blackmail the

customers. The lawyer told the media that Vackar was fired for not following Superior's instructions to commit these immoral and illegal acts. Vackar's lawyer stated that several other employees witnessed Superior's orders to Vackar about the strip clubs and would support Vackar's version of events.

After discovery, Superior moved for summary judgment. The evidence included affidavits from current and former Superior employees denying Vackar's accusations and denying that they ever saw or heard Kotcher instruct Vackar or anyone else to falsify expense reports to get money to take clients to strip clubs or pay for prostitutes; that Vackar repeatedly falsified expense reports and received reimbursements for expenses he had not incurred; and that Vackar told people inside and outside the company that he liked working at Superior and told no one that he had been directed to perform illegal and immoral acts. Vackar did not controvert any of this evidence.

This court granted Superior's motion for partial summary judgment on Vackar's claim that he had been wrongfully terminated because he refused to commit illegal acts. The undisputed evidence showed that Vackar was not fired for his refusal to perform illegal acts, but for his poor work performance, falsifying expenses on his expense reports, falsifying call and sales reports, and insubordination. In making this ruling, the court noted that Vackar's declaration was contradicted by his own statements and conduct, both during and after his employment at Superior.

Superior asserted counterclaims against Vackar for business disparagement, fraud, money had and received, and defamation. Superior also sought sanctions under both federal and state law for Vackar's frivolous allegations in his pleadings and other filings, and for defamatory statements he made through his lawyer in the media. The court granted Superior's motion for summary judgment on its counterclaims for fraud, money had and received, defamation, and on some of the

elements of its business disparagement claim. The court also granted Superior's motion for sanctions under both federal and state law. The remaining issues are the amount of actual damages, the availability and amount of exemplary damages, the amount of sanctions, and the remaining elements of the business disparagement claim.

Superior seeks actual damages on the following counterclaims: $925.24 for inappropriately charged business expenses; $2,200 for Superior's employees' loss of productivity in the days following the broadcast, (Docket Entry No. 50 at 10); $32,600 for Kotcher's lost productivity due to time he spent responding to the media statements, (*id.*); $381,567.87 for harm to Superior's reputation, corresponding to billings from customers who placed an order in 2012 but did not return after Vackar publicized his allegations; and $319,997 in attorneys' fees for defending Vackar's claims, (*id.* at 13). Superior also sought exemplary damages on the counterclaims.

Superior seeks two kinds of sanctions for Vackar's frivolous pleadings: attorneys' fees through July 8, 2013, when the court granted summary judgment dismissing Vackar's *Sabine Pilot* claim; and an order requiring Vackar to sign a retraction letter that Superior could use to persuade websites to take down content reporting or repeating Vackar's accusations against Kotcher and Superior. (Docket Entry No. 50).

The record includes extensive evidence showing that the allegations Vackar made in his pleadings and repeated in statements to the media were false. The evidence showed that contrary to his statement to the media that he had witnesses to Superior's improper orders, Vackar in fact had no evidence other than his own statement. Superior submitted the declarations of every former or current employee who had worked with Vackar or held a position similar to Vackar's. All stated that they never witnessed the events that Vackar alleged. Superior also submitted Vackar's own

4

statements made while he was working at Superior, when he was fired, and when he claimed unemployment compensation. At each point, he made statements inconsistent with his litigation position and with his statements to the media. Finally, Superior presented evidence of its own harm caused by Vackar's statements. The internet postings included sections inviting readers to comment; Superior submitted evidence of highly negative reader comments about Superior. In addition, Superior submitted evidence of "a good deal of fire from Superior's customers." (Docket Entry No. 32, at 17). "Ever since the publication of the Media Statements and even after the Court dismissed the *Sabine Pilot* claim, Superior's customers (and probably ex-customers now) have repeatedly pelted Superior with questions about this 'sex scandal.'" (*Id*.). Superior explained that the court's rulings did not remove the effects of Vackar's accusations, particularly because they pop up when "Superior" is typed in a web search. In the February 27, 2014 hearing, Kotcher testified about the losses Superior suffered as a result of the allegations Vackar's lawyer repeated to the media.

Vackar testified that he asked Superior to reimburse him for expenses he did not incur, with explanations that were not true, and kept the money he received. He testified, without credibility, that he did so because Kotcher told him to submit fake expenses to get company money to take customers to strip clubs and purchase sexual entertainment for them. The explanation is incredible in part because Vackar testified that he kept the reimbursements with no intention of using it for any company purpose, legitimate or otherwise.

The court also heard testimony from the lawyer who filed the suit on Vackar's behalf and gave the interview to the reporter that was widely broadcast. The lawyer confirmed that Vackar knew about the interview in advance and agreed, although neither Vackar nor his lawyer solicited the reporter's request.

5

## II. Superior's Counterclaims

### A. Fraud and Money Had and Received

This court granted summary judgment on Superior's fraud counterclaim because the undisputed evidence showed that Vackar falsified his reimbursement requests to get paid for expenses he had never incurred and that Superior paid Vackar based on these requests. The court also granted summary judgment on the counterclaim for money had and received. Vackar admitted that at least $925.24 of the $965.35 he received in reimbursement was for falsely claimed expenses. The court awards Superior $925.24 on its counterclaims for fraud and money had and received.

Under Texas law, exemplary damages are recoverable when clear and convincing evidence shows harm resulting from fraud. TEX. CIV. PRAC. & REM. CODE § 41.003(a). Texas law limits the amount of exemplary damages. *Id.* at § 41.008(b). In determining the amount, the trier of fact considers: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the wrongdoer's culpability; (4) the situation and sensibilities of the parties concerned; (5) the extent to which such conduct offends a public sense of justice and propriety; and (6) the defendant's net worth. *Id.* at § 41.011(b); *see also Federal Nat'l. Mortg. Ass'n. v. Okeke*, No. 4:04-cv-4405, 2006 WL 355241 (S.D. Tex., Feb. 14, 2006); *Wright v. Blythe-Nelson*, No. Civ.A. 399CV2522D, 2004 WL 1923871 (N.D. Tex., Aug. 26, 2004); *Alamo Nat'l. Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981); *Huynh v. Phung*, No. 01-04-00267-CV, 2007 WL 495023, at *10 (Tex. App. — Houston [1st Dist.], Feb. 16, 2007, no pet.); *Long v. United Welding Supply, Inc.*, No. 01-03-00034-CV, 2006 WL 1428823, at *11, n. 10 (Tex. App. — Houston [1st Dist.], May 25, 2006, no pet.); *see generally Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 308 (Tex. 2006) (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)). Considering all the factors, the court awards Superior

$1,500 in exemplary damages against Vackar based on the counterclaims for fraud and money had and received.

B.  **Defamation**

The court also granted Superior's motion for summary judgment on its defamation claim, based on the false statements Vackar made through his counsel in the media and the absence of any legal excuse to do so. Because at least some of the statements at issue were defamatory *per se*, Superior need not produce evidence of pecuniary injury to recover nominal damages.

Superior claimed actual damages of $416,167.87 on its defamation claims, consisting of lost employee productivity for time spent responding to the media reports of Vackar's accusations and lost business revenue. Of that amount, Superior attributed $2,200 to lost employee productivity on November 14 and 15, the days right after the interview aired. Superior presented evidence that it had to send its employees home early on those days to avoid reporters waiting outside Superior's offices, and that during the work day, the news stories distracted the employees. But Superior did not provide sufficient proof of how many hours of employee time or productivity were lost, which employees were affected, and how distracted those employees were. The record does not support a damages award.

Superior claimed $32,600 for 217 hours Kotcher spent dealing with the media reports of Vackar's accusations and helping defense counsel respond to them. Superior calculated an hourly rate of $150, less than the amount his time was billed by a prior employer for work similar to his Superior job. At the hearing, Kotcher testified that of the 217 hours, he spent only 32 to 37 personally responding to the news broadcast, and another 40 helping the defense prepare its response. A more accurate estimate of the time Kotcher spent is 72 hours. Kotcher's testimony was

7

credible. The evidence supports an award of $10,800, based on 72 hours at $150 per hour.

Superior also seeks $381,567.87 in lost business revenue. Superior presented evidence showing that in the months following the media coverage, Superior's Fittings Division had a higher rate of customer loss and recruited fewer new customers compared to the months just before. But Kotcher testified at the hearing that although customers and others asked him about the broadcast and the statements, no customers told him that they were taking their business elsewhere. The record does not sufficiently show that the difference in billings from the prior year is linked to the defamatory statements. No award is made for this damages category.

Superior seeks exemplary damages on its defamation claim, which requires a showing that Vackar made the statements with malice, the specific intent to cause substantial harm. TEX. CIV. PRAC. & REM. CODE. §§ 44.001(7), 44.003(a)(2); *Bentley v. Bunton*, 94 S.W.3d 561, 604–05 (Tex. 2002). "Specific intent means that the actor desires to cause the consequences of his act, or that he believes the consequences are substantially certain to result from it." *Vaughn v. Drennon*, 202 S.W.3d 308, 321 (Tex. App. — Tyler 2006, no pet.). The record does not support a finding that Vackar acted with such intent. Neither Vackar nor his counsel initiated the media interview or solicited the coverage. The interview took place on short notice. Although this court has found that the statements were defamatory — they tracked the allegations Vackar made in his complaint and testified to at trial — the record does not support finding malice in the publicity the allegations received. Exemplary damages are not warranted.

### C. Business Disparagement

This court has found that Vackar made disparaging false statements about Superior without a privilege to do so. Besides these elements of business disparagement, Superior must also show

that Vackar made the defamatory statements with "actual malice," that is, with knowledge or reckless disregard as to their falsity, and that it suffered special damages. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 120 (Tex. 2000). Superior presented evidence on these claim elements at the February 27, 2014 hearing.

Vackar has admitted that at least some of the statements he made to the media were false. Superior submitted evidence showing that Vackar did not tell anyone about the orders he allegedly received from Kotcher until after he was fired. The evidence shows that Vackar made the accusations with actual malice; he knew that they were false or acted with reckless disregard as to their truth. But Superior's business disparagement claim nonetheless fails because it did not sufficiently prove special damages from the statements Vackar made to the media. Business disparagement damages require proof that "the communication . . . play[ed] a substantial part in inducing others not to deal with the plaintiff with the result that special damage, in the form of the loss of trade or other dealings, is established." *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 767 (Tex. 1987). Kotcher presented evidence that Superior experienced an increase in customers who did not repeat business and a decrease in new business after the media coverage, but he did not sufficiently link these business losses to the statements Vackar made. Because Superior has not sufficiently proven special damages, its claim for business disparagement fails.

### D. Attorneys' Fees

Superior also seeks $319,997 in attorneys' fees for defending against Vackar's claims. These fees overlap with those sought as a sanction and are considered below.

## III. Superior's Motion for Sanctions

Superior followed the safe harbor procedure in seeking sanctions for Vackar's postremoval

9

pleadings under Rule 11 of the Federal Rules of Civil Procedure and for his preremoval pleadings under Rule 13 of the Texas Rules of Civil Procedure. *Tompkins v. Cyr*, 202 F.3d 770, 787 (5th Cir. 2000). The court granted sanctions under both state and federal law. The issue is the appropriate amount and form those sanctions should take. Superior seeks $234,686, representing its legal fees up to the court's grant of summary judgment, and a letter from Vackar retracting his accusations against Superior and acknowledging their falsity.

A court may impose sanctions on either a party or counsel, *see* Committee Note to Rule 11; *see also Topalian v. Ehrman*, 3 F.3d 931 (5th Cir. 1993), but must impose the least severe sanction commensurate with the rule violation. *Mercury Air Grp., Inc. v. Mansour*, 237 F.3d 542, 548 (5th Cir. 2001). "[T]he least severe sanction for a lawsuit that is wholly frivolous is the imposition of reasonable attorneys' fees and expenses." *Id.* (*citing Granader v. McBee*, 23 F.3d 120, 124 (5th Cir. 1994)). Sanctions against counsel are not appropriate here. To the contrary, it appears that when the lack of support for Vackar's allegations became clear, the lawyer who had initially represented him and filed the lawsuit in state court withdrew.

The evidence supports requiring Vackar to pay part of the fees Superior incurred in defending the lawsuit. Superior submitted evidence showing a reasonable hourly rate and a reasonable number of hours, given Vackar's allegations and his litigation conduct. Awarding the full amount of the fees Superior seeks is more severe than necessary to sanction Vackar's behavior. The fact that he represented himself for much of the litigation makes a difference. When the sanctions are to be imposed against an individual who is unable to afford the expense, and who for an extended period during the litigation was *pro se*, courts have discretion to award a reduced fee. The court concludes that an appropriate amount of sanctions is $5,000. That is less than 3 percent

of the fees Superior incurred in defending the claims Vackar pursued but, in combination with the $925.24 in fraudulently obtained reimbursements the court has ordered him to repay, the $1,500 in exemplary damages, and the $10,800 in damages for Superior's internal costs of responding to the defamatory statements Vackar made, the sanction amount is both significant and appropriate. The amount takes into consideration Vackar's resources and the fact that he represented himself in this case for an extended period, as well as the fees Superior incurred in defending against Vackar's lawsuit.

Superior also seeks nonmonetary sanctions in the form of an apology letter from Vackar. Superior intends to contact media and internet organizations who have covered Vackar's allegations and ask them to retract or remove their coverage. Superior believes that a letter from Vackar would persuade these media organizations to do so because it would confess that the allegations were falsely made. The court's orders in this case sufficiently establish that Vackar's claims were wholly unsupported by the evidence presented. Nothing prevents Superior from taking a copy of the court's opinions to the media and internet organizations. Further steps are unnecessary. Superior's request for an apology letter is denied.

## IV. Conclusion

The court orders Vackar to pay Superior a total of $18,225.24 as damages and as a sanction.

SIGNED on November 7, 2014, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

11